UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:23-cv-10906

DENICE JOHNSON,
    *Plaintiff,*
  v.

CITY OF BROCKTON, et al.,
    *Defendants.*

# COMPLAINT AND DEMAND FOR JURY TRIAL

> Disrespecting a police officer is not a crime. . . . These are the benefits of living in a free state. We expect properly trained officers to have 'thicker skin' and exercise more restraint than the average citizen. We don't expect them to retaliate or respond belligerently to verbal attacks or provocation. And we certainly don't expect them to lose their cool in response to adolescent emotion and bravado. Yet that is exactly what happens far too often.

KRISTIN HENNING, THE RAGE OF INNOCENCE, HOW AMERICA CRIMINALIZES BLACK YOUTH 149-150 (2021)

    This is a § 1983 civil rights police misconduct case. On October 3, 2019, 17-year-old Plaintiff Denice Johnson ("Plaintiff" or "Ms. Johnson") exercised her constitutional right to video tape Officer Raymond Parrett as he was aggressively questioning her schoolmate.

    In response Raymond Parrett became enraged and repeatedly slapped her phone away. Then he slammed her to the ground straddled her buttocks region placing his full 5'10", 185 lbs. frame on her body. He flipped her over, pepper sprayed her, discharging the spray for approximately three seconds, and then arrested her without a semblance of probable cause.

    Ms. Johnson suffers from physical and emotional injuries, all for recording a police officer who was acting aggressively towards another minor that was her friend.

## JURISDICTION

1. The complaint alleges violations of 42 U.S.C. § 1983.  Thus, there is "federal question jurisdiction" pursuant to 28 U.S.C. § 1331.  Additional counts are joined per Rule 18 and the doctrine of pendant or supplemental jurisdiction.  See *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

## VENUE

2. The events leading to this matter occurred on October 3, 2019. The Plaintiff Ms. Johnson reached the age of majority on February 2, 2020.

3. On July 1, 2020 the Supreme Judicial Court issued the order 'The Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic" which had the effect of tolling the statute of limitations for all civil actions by 106-days.

## PARTIES

4. Denice Johnson is a resident of Brockton, Massachusetts located in Norfolk County. Her date of birth is February 2, 2002. She reached the age of majority on February 2, 2020.

5. Defendant Raymond Parrett ("Defendant Parrett") at all relevant times was a Brockton Police Officer, specifically, a school resource officer. Defendant Parrett is an individual who residence is unknown to plaintiff.  He is employed by the City of Brockton as a Brockton Police Officer, with a business address of Brockton Police Department ("BPD"), 7 Commercial Street, Brockton, Massachusetts. He is sued in his individual capacity. At all relevant times Defendant Parrett was dressed in his BPD uniform, which clearly displays the Brockton Police Department insignia.  Defendant Parrett was also carrying his police issued handgun, handcuffs, mace and radio. At the time he weighed approximately 185 lbs. and was 5'10" in height.

6. Defendant City of Brockton ("Brockton") is a City in Norfolk County, Massachusetts. Brockton is a municipal corporation organized under Massachusetts Law. At all relevant times Brockton was a person "acting under the color of law" within the meaning of U.S.C. §1983. The City of Brockton has control and authority over the BPD.

## STATEMENT OF FACTS

7. On October 3, 2019, Brockton High School ended school early, sometime around 11:59 a.m.

8. Around this time, multiple kids were on Forest St. disrupting the flow of traffic. As such BPD dispatched approximately 5 to 7 officers, including but not limited to, Defendant Parrett, Officer Nicole Anderson, Officer Spencer Benoit, Officer Jonathan Dane, Officer Daniel Vaughn and Lieutenant ("Lt.") Frank Vardaro to the location. They were dispatched because there had been some fights in the area.

9. Defendant Parrett, Officer Anderson, Officer Benoit, Officer Dane, Officer Vaughn and Lt. Vardaro were all dressed in full BPD uniform including badge and duty belt. Lt. Vardaro provided oversight for the BPD over the school police department which includes school police officers and resource officers (resource officers are BPD officers).

10. Ms. Johnson was walking home from school along Forest Ave. She was walking with a friend Roberto Emile. Ms. Johnson was 17 at this time and weighed approximately 110 lbs. Mr. Emile was also 17-years-old.

11. The two saw a commotion on Forest St. and to avoid it, turned onto Florence St., the street she lives on.

12. On Florence St. there was less of a crowd.

13.     While walking easterly on Florence St. Ms. Johnson noticed that Defendant Parrett was driving, in a marked police cruiser, in the opposite direction. There was no crowd in the vicinity of Ms. Johnson and Mr. Emile and Defendant Parrett did not see any fighting in the area.

14.     There were no other police officers or police cruisers in the area at this time.

15.     While walking, Mr. Emile made the statement "fuck the police." Neither Ms. Johnson nor Mr. Emile made threats to Defendant Parrett, nor did they there make any threatening hand gestures, nor did they throw anything at the cruiser.

16.     At this point, Defendant Parrett disregarded the reason for being on Florence St. and confronted Mr. Emile. Defendant Parrett stopped the police cruiser, reversed it, exited the vehicle slammed the door closed.

17.     Defendant Parrett exited the vehicle because Mr. Emile swore.

18.     He approached Mr. Emil and Ms. Johnson and aggressively demanded that Mr. Emile repeat what he said.

19.     Mr. Emile began to walk away.

20.     Neither Ms. Johnson nor Mr. Emile had committed any crimes.

21.     Defendant Parrett positioned himself within arm's length of Ms. Johnson and Mr. Emile.

22.     Eventually Defendant Parrett was chest to chest with Mr. Emile and continued to aggressively tell Mr. Emile to repeat what he said. Defendant Parrett did this several times.

23.     At around this time Mr. Emile put his hands up and began to walk away.

24.     Ms. Johnson took her phone from her pocket and started recording. She pulled out her phone for evidence because Defendant Parrett was acting very aggressively and threatening to arrest Mr. Emile for what he said.

25. At no point did Ms. Johnson touch or otherwise initiate contact with Defendant Parrett, which Defendant Parrett admitted while testifying during the criminal trial.

26. Still, Defendant Parrett became angry, which he admitted at the criminal trial.

27. He slapped the phone out of her hand, which he admitted to at the criminal trial.

28. Ms. Johnson picked it up and he knocked it out again.

29. Ms. Johnson picked it up again and he knocked it out again.

30. Defendant Parrett knocked the phone out of her hand at least three times.

31. While doing so Defendant Parrett commanded to Ms. Johnson to get that phone out of is "fucking face" and ordered her to stop "fucking" recording him. Defendant Parrett swore at her several times.

32. At this point Mr. Emile used his phone to begin recording Defendant Parrett.

33. Defendant Parrett slapped the phone out of Ms. Johnson's hand a final time, then Defendant Parrett became engaged in a fight with a juvenile (Cyrus Cox ("Mr. Cox")) who was standing behind Ms. Johnson. He threw Mr. Cox to the ground and drove his knee into Mr. Cox's lower torso.

34. At this time Officer Nicole Anderson asked Ms. Johnson and Mr. Emile to move aside and they both obeyed but both continued to record the BPD's interaction and arrest of Cyrus Cox and another individual, Andy Dumoulin.

35. Once they were handcuffed, both Mr. Emile and Ms. Johnson started to walk away. At this point neither Mr. Emile nor Ms. Johnson had committed any crimes and were not a threat to anybody. Nonetheless, the BPD initiated the arrest of both students.

The Arrest and use of Excessive Force upon Mr. Emile because of his 1st Amendment Activity:

36. At this point Mr. Emile had his back towards the officers and was walking away and he had not committed any crime. However, Mr. Emile heard an officer, possibly Officer Daniel Vaughn say something to the effect of "you want to talk shit. You're under arrest" and grabbed him and slammed him to the ground.

37. Mr. Emile repeatedly asked what he did and stated that he did not do anything, as such he did not submit to the BPD's attempt to arrest him. At this point, Officer Jonathan Drane tased Mr. Emile.

38. Mr. Emile was then handcuffed and placed in a cruiser.

The Arrest and use of Excessive Force upon Ms. Johnson because of her 1st Amendment Activity:

39. After Mr. Emile's arrest was initiated, Defendant Parrett pointed to Ms. Johnson and initiated her arrest as well.

40. At no time had Ms. Johnson committed any crime. She had complied with the instructions to move back, and continued recording using her phone from a larger distance away.

41. Officer Parrett knew that Ms. Johnson could choose not to speak to an officer, walk away from an officer, and openly record an officer, which is what she did.

42. Defendant Parrett grabbed her hand, she asked him to let her put her phone away and in response, he grabbed her by her ponytail and backpack and threw her to the ground.

43. Once on the ground, Ms. Johnson told Defendant Parrett that she was hurt and just wanted to put her phone away and intended to listen.

44. Defendant Parrett positioned himself in a manner where he was straddling her buttocks. Her arms pinned under her torso. He ordered her to give him her arms and she stated she would comply, she just wanted to put her phone in away.

45. Then Defendant Parrett then flipped Ms. Johnson around, remaining straddled on top of her, grabbed his pepper spray, and sprayed her.

46. Defendant Parrett discharged his pepper spray for over three seconds.

47. The result of the pepper spray was that Ms. Johnson could not breathe, she felt as though her face, nose and lungs were on fire. Ms. Johnson called out for her mom and sister who were nearby.

48. Defendant Parrett then flipped her over and handcuffed her. She requested medical help, but he did not listen. She also stated that her home was a short distance away and Defendant Parrett responded with something to the effect "you should have taken your behind home."

49. Ms. Johnson asked to retrieve her phone and Defendant Parrett stated one of the officers would get it.

50. Ms. Johnson requested medical attention several times after being slammed to the ground and pepper sprayed. None of the officers present, including Defendant Parrett, responded by arranging medical care for her.

51. At the station, Defendant Parrett began taunting Ms. Johnson. After looking at her booking photos, which showed her injuries, he stated "she looked nice." He also stated that she listened to too much rap music.

52. He also denied knowing anything about her cell phone (which had the entire incident recorded). BPD did not recover her phone.

53. When Ms. Johnson asked for her phone, while at the police station, Defendant Parrett mocked her further by pretending to search for it, asking other officers sarcastically if they saw Ms. Johnson's phone.

After the arrest:

54.     The BPD internal affairs division investigated whether the police officers, including but not limited to Defendant Parrett acted appropriately during the October 3, 2019 incident.

55.     Sgt. Kenneth Lofstrom wrote, in a report to Captain Hallisey, that after review of the reports submitted by the officers and after watching a video placed on a Facebook page referred to as "Brockton Hub," that he concluded that all officers acted appropriately and followed department rules and regulations.

**STATEMENT OF CLAIMS**

**COUNT I –EXCESSIVE FORCE
(Raymond Parrett)**

56.     Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

57.     The attacks of Plaintiff by Defendant Parrett constituted the use of excessive and unreasonable force in violation of Plaintiff's rights guaranteed by the United States Constitution including, but not limited to, the Fourth, Eighth, and Fourteenth Amendments.  When Defendant Parrett attacked Plaintiff using force against her, Defendant Parrett intended to inflict, and did inflict, serious physical and emotional injuries to Plaintiff.

58.     The complete indifference of Defendant Parrett to the health and well-being of Plaintiff, demonstrated by slapping her phone away repeatedly, slamming her to the ground, sitting on her, pepper spraying her for over three seconds, and not summoning medical treatment after the attack deprived Plaintiff of her right to the security of his person and the right to liberty in violation of the United States Constitution including, but not limited to, the Fourth, Eighth and Fourteenth Amendments and in violation of the provisions of 42 U.S.C §1983.

59.     The actions of Defendant Parrett, in violation of Plaintiff's constitutional rights described above, were done maliciously, in bad faith, purposely, and intentionally, thereby entitling Plaintiff to punitive damages.

60.     As a uniformed Brockton Police Officer, Defendant Parrett was acting under the color of law when he violated plaintiff's constitutional rights in violation of 42 U.S.C. §1983 and is liable to plaintiff, both individually and as an official of the City of Brockton.

61.     As the result of the actions of Defendant McDermott in depriving Plaintiff of her constitutional rights in violation of 42 U.S.C. §1983, as described above, Plaintiff has sustained severe personal and emotional injuries, has suffered great pain of body and mind, and has permanent scarring of her person.

### COUNT II –FIRST AMENDMENT RETALIATION
### (Raymond Parrett)

62.     Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

63.     The attacks of Plaintiff by Defendant Parrett constituted the use of excessive and unreasonable force in violation of plaintiff's rights guaranteed by the United States Constitution including, but not limited to, the First Amendment.  When Defendant Parrett attacked Plaintiff using force against her, Defendant Parrett intended to inflict, and did inflict, serious physical and emotional injuries to Plaintiff.

64.     The complete indifference of Defendant Parrett to the health and well-being of Plaintiff and the Plaintiff's constitutional right to free speech, demonstrated by slapping her phone away repeatedly in response to her recording, slamming her to the ground, sitting on her, pepper spraying her for three seconds not summoning medical treatment after the attack and arresting

her was in retaliation of the Plaintiff's exercise of her right to right to free speech in violation of the United States Constitution including, but not limited to, the First Amendment and in violation of the provisions of 42 U.S.C §1983.

65. The actions of Defendant Parrett, in violation of Plaintiff's constitutional rights described above, were done maliciously, in bad faith, purposely and intentionally thereby entitling Plaintiff to punitive damages.

66. As a uniformed Brockton Police Officer, Defendant Parrett and the other officers were acting under the color of law when he violated Plaintiff's constitutional rights in violation of 42 U.S.C. §1983 and is liable to Plaintiff, both individually and as an official of the City of Brockton.

67. As the result of the actions of Defendant Parrott in depriving Plaintiff of her constitutional rights in violation of 42 U.S.C. §1983, as described above, Plaintiff has sustained severe personal and emotional injuries, has suffered great pain of body and mind, and has permanent scarring of her person.

## COUNT III –VIOLATION OF 42 U.S.C. §1983 (MONELL)
### (City of Brockton)

68. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

69. The City of Brockton as an entity, through law enforcement officers at the highest level, encouraged, aided and abetted the violations of law described above, in a pattern of deliberate indifference to citizen's constitutional rights.

70. Three officers Defendant Parrett, Officer Dane, and Officer Vaughn, along with their unit commander Lt. Vardaro arrested two individuals, for exercising their constitutional rights and arrested them using excessive force.

71. As such, violations of law described above constituted a custom or policy of the City of Brockton.

72. This caused great damage to the Plaintiff. Therefore, the City as an entity should be liable to Plaintiff per 42 U.S.C. § 1983.

<b>COUNT IV – VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT</b><br><u><b>(All Defendants)</b></u>

73. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

74. By engaging in the conduct described above, including threats, intimidation and coercion, Defendant Parrett, in violation of Massachusetts General Laws Chapter 12, §11I, interfered with and deprived Plaintiff of her exercise and enjoyment of his civil rights secured under the laws of the Commonwealth of Massachusetts.

75. As a direct and proximate result of the Defendant's violations of M.G.L. c. 12, §11I, Plaintiff suffered the injuries described above.

76. Defendants are jointly and severally liable for all damages.

<b>COUNT V – BATTERY</b><br><u><b>(All Defendants)</b></u>

77. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

78. Defendant Parrett intentionally, viciously and unlawfully used mace against the Plaintiff, physically tackled her to the ground, sat on top of the her and pepper sprayed the Plaintiff,

greatly injuring her. The Defendant's unwanted and unprovoked attack constituted unlawful battery rendering them liable to Plaintiff.

79. As a direct and proximate result of the attack, Plaintiff sustained the injuries described above.

80. Defendants are jointly and severally liable for all damages.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (All Defendants)

81. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

82. When Defendant Parrett assaulted and attacked Plaintiff as described above, he intended to inflict emotional distress, or he knew or should have known that emotional distress was the likely result of his conduct.

83. The attack by Defendant Parrett was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

84. The attack by the Defendant Parrett and consequent injury caused Plaintiff to sustain emotional distress so severe that no reasonable person could be expected to endure it.

85. As a result of the conduct of Defendant Parrett, Plaintiff has suffered extreme emotional distress and anxiety.

86. Defendants are jointly and severally liable for all damages.

## JURY TRIAL DEMAND

87. Ms. Johnson requests a jury trial.

## RELIEF

88. Ms. Johnson respectfully requests that the Court use its fullest equitable powers to order the individual Defendant Parrett:

    a. to use only reasonable force in the performance of his police duties;

    b. to intervene when excessive force is used by other police officers in the course of an arrest or incarceration;

    c. to report to superiors the use of, and injuries caused during the use of, excessive force;

    d. to write complete and truthful police reports;

89. Ms. Johnson respectfully requests that the Court further:

    a. Order judgment in Plaintiffs favor in such amount as will fully compensate them for their losses to the greatest extent allowed by law.

    b. Order such exemplary or punitive damages as are allowed by law.

    c. Order payment of interest, costs and attorney's fees.

    d. Order such further relief as this Court deems fair and just.

Respectfully Submitted
DENICE JOHNSON
By her Attorney

/s/Chetan Tiwari
Chetan Tiwari, BBO No. 692912
Tiwari Law
1842 Centre St.
W. Roxbury, MA 02132
T: (617) 396-6856
F: (617) 865-6770
ctiwari@tiwarilaw.com

Date: May 1, 2023